R. D. JONES ET AL. v. THOS. H. FANCHER ET AL.

(Case No. 5178.)

1. PURCHASE — POWERS — PRESUMPTION.— In 1853 a county court caused to be entered on its minutes an order directing the sale of lots at the county seat, located on land which had in part been donated to the county. No one was directed by the order to conduct the sale, but a report of sales was after-

wards made to the court by the chief justice of the county and entered on the minutes, showing the sale of the lot involved in this suit. An order was thereupon entered, authorizing the chief justice to "take notes" from purchasers and "give bonds." In 1855 an order was entered, requiring the same chief justice to make deeds to all persons owning lots at the county site, who had complied with the terms of sale. In a suit begun in 1883. involving the title to a town lot at the county seat, sold by that chief justice in 1853, his deed was produced to one who; it was shown, paid the purchase money, but the testimony tended to show that it was paid after the deed was executed. *Held:*

(1) The sale by the chief justice, in connection with the other facts stated, passed title, though no order was produced from the minutes of the court authorizing him to sell.

(2) Title would pass even though the provisions of art. 1052, Pasch. Dig., were ordinarily held to be mandatory.

(3) If necessary to sustain the title, under the facts above stated, after so great a lapse of time, it should be presumed that the proper order to sell issued to the chief justice.

(4) The recognition of the power of the chief justice, shown by the acts of the county court, would preclude the county from questioning the title of a purchaser holding under his deed.

2. TRESPASS TO TRY TITLE — COUNTY SEAT — JUDICIAL NOTICE.— Though a court may judicially know that a particular town is the county seat of a county, yet in trespass to try title to a lot in such town the plaintiff cannot recover by simply showing title derived from the state, in the county, to land covered by a county seat, and a conveyance from the county to him. Such evidence does not negative the fact that the county seat may embrace other land, and that the plaintiff's lot is located on such other land.

APPEAL from Hill. Tried below before the Hon. Jo Abbott.

Trespass to try title, brought January 31, 1883, by appellees, to recover lot No. 2, in block No. 1, in the town of Hillsboro. Defendants pleaded the "general denial" and "not guilty." Judgment for plaintiff. The important facts will be found in the opinion.

*B. D. Tarlton,* for appellee, cited: Ferguson *v.* Halsell, 47 Tex., 421.

*Wm. L. Booth,* for appellees.

STAYTON, ASSOCIATE JUSTICE.— It was incumbent on the appellees, who claim title from Hill county, to prove that the county once had title to the land in controversy, and that they have acquired that title. The only evidence introduced to prove that the lot in controversy ever belonged to the county was: 1st. A patent to G. M. Steiner for three hundred and twenty acres of land, dated May 7, 1854. 2d. A deed from Steiner to Hill county for two hundred and twenty acres of the land patented to him, dated March 2, 1855, and

purporting to be conveyed in consideration of the county seat of Hill county being located on the land. 3d. The lot is described as situated in the town of Hillsboro. It is probable that the deed by Steiner was made in pursuance of a former contract with the county, but this does not clearly appear.

This may all be true, and yet the lot in controversy be no part of the tract of land conveyed by Steiner to Hill county. If it appeared that the town of Hillsboro, which we may judicially know is the county seat of Hill county, embraced only the land conveyed by Steiner to the county, then proof of title in Hill county to the lot would be sufficient; but there is no such proof, and, from facts which appear in the transcript, the inference is strong that the town does embrace other land than that conveyed by Steiner to the county. If it be true that the lot in controversy was a part of the land conveyed to the county by Steiner, proof of that fact could have been easily made, and in the absence of such proof that fact will not be presumed from the simple fact that the lot is in the town of Hillsboro.

It appears that the county court for Hill county made, and had duly entered on its minutes, an order on the 24th day of September, 1853, directing the sale of lots in the town of Hillsboro; but it does not appear who was directed to sell the lots; and that a report of sales was made by Dyer, the chief justice of the county, and entered on the minutes of the county court at a regular term, on the 20th of February, 1854, showing a sale of many lots in the town of Hillsboro, among which was the sale of the lot in controversy to the deceased ancestor of the appellees. That appears to be an "account of sales of a portion of the town lots of Hillsboro sold on the 1st day of November, 1853, made out by me this 14th day of January, A. D. 1854. (Signed) James H. Dyer, Chief Justice."

On November 21, 1853, the county court entered an order that Dyer, the chief justice, "take notes and give bonds to all persons who purchased lots in said town of Hillsboro on Tuesday, the 1st day of November, A. D. 1853," which was the time at which the former order directed the lots to be sold.

At the February term of the county court for the year 1855, the following order was entered: "Ordered by the court, that James H. Dyer, chief justice of Hill county, be and he is hereby required to make and execute deeds of conveyance to the town lots of Hillsboro to all persons owning lots who have complied with the terms of the sale of said lots;" and on the 27th February, 1855, Dyer, chief justice, made a deed to the deceased ancestor of the appellees

for the lot in controversy and for other lots, which recited a consideration of $100 paid.

It was proved that the sale of lots, made November 1, 1853, was made at public auction by Dyer, the chief justice, and that the lot in controversy was fully paid for; but there is some testimony tending to show that the payment was made after the date of the deed. The lots seem to have been sold on a credit of one and two years.

It is insisted that, as no order is shown to have been entered on the minutes of the county court authorizing Dyer to sell the lots, the sale made by him, in connection with the other facts shown, passed no title to the lot in controversy, even if it belonged to Hill county.

This proposition, we are of the opinion, cannot be sustained, for reasons given in Wooters v. Hall, *ante*, p. 15; even if, ordinarily, the provisions contained in art. 1052, Pasch. Dig., were held to be mandatory.

If necessary to sustain a title evidenced by such facts as is the present, after so great a lapse of time as has occurred in this case, in the absence of something rebutting it, it ought to be presumed that the proper order empowering the chief justice to make the sale was made.

The orders shown to have been made evidence a recognition by the county court of the power of the chief justice to do every act necessary to vest in the purchaser such title as the county had.

Under the facts proved, the county could not be heard to question the title of the purchaser; and the appellants, who are not shown to have any right whatever to the lot, certainly do not occupy any more favorable situation.

If the lot belonged to Hill county, the proceedings had, which resulted in the deed to the deceased ancestor of the appellees, were sufficient to vest title in him through that deed, and the court did not err in so holding.

For the failure, however, of the appellees to show that the lot in controversy belonged to Hill county through the conveyance from Steiner or otherwise, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered June 3, 1884.]